UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| LENTEK INTERNATIONAL, INC., | ) | Case No. 6:03-bk-08035 |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |
| ———————————————— | ) | |
| MICHAEL MOECKER, AS | ) | |
| LIQUIDATING TRUSTEE FOR LENTEK | ) | |
| INTERNATIONAL, INC., | ) | Adversary No. 6:05-ap-187 |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| LOUIS LENTINE AND KELLI LENTINE, | ) | |
| INDIVIDUALLY, AND AS THE | ) | |
| PARENTS, NATURAL GUARDIANS | ) | |
| AND NEXT OF KIN OF LOGAN | ) | |
| LENTINE, | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————— | ) | |
| MICHAEL MOECKER, AS | ) | |
| LIQUIDATING TRUSTEE FOR LENTEK | ) | |
| INTERNATIONAL, INC., | ) | Adversary No. 6:05-ap-188 |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| LOUIS LENTINE, | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————— | ) | |
| MICHAEL MOECKER, AS | ) | |
| LIQUIDATING TRUSTEE FOR LENTEK | ) | |
| INTERNATIONAL, INC., | ) | Adversary No. 6:05-ap-191 |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| KELLI LENTINE, | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————— | ) | |

## MEMORANDUM OPINION DENYING
## DEFENDANTS' SECOND MOTIONS TO COMPEL

The defendants in these three related adversary proceedings filed identical Second Motions to Compel Responses to Discovery[1] (the "Motions").  The Court directed the plaintiff to file a written response to the Motions and gave the defendants an opportunity to file a surreply.  Both parties timely filed responses and surreplies.[2]  After reviewing these pleadings, the Court denies the Motions.

To understand the current discovery dispute, a history of the parties' relationships and their past discovery practices in these adversary proceedings is necessary.  The debtor, Lentek International, Inc. ("Lentek"), filed its Chapter 11 case on July 11, 2003.  Louis Lentine was a shareholder, officer, and director of the company and signed the petition initiating the case.  Lentek sold various novelty products, such as mosquito control devices, on a wholesale basis to retail stores, such as Wal-Mart.  Lentek typically ordered their products from various manufacturers located in Asia, often in China.  As such, the company provided a link between foreign manufacturers and North American vendors.  Lentine made all of the operational and financial decisions of Lentek both before and after the bankruptcy filing.  Without question, Lentine is the person with the best understanding of Lentek's business, its financial operations and, most relevant, its books and records.

Lentek had significant and multiple business and financial problems when it filed its Chapter 11 case.  Several creditor groups opposed reorganization.  The litigation was extensive.

---

[1] Second Motion to Compel Responses to Discovery: Doc. No. 34 in 6:05-ap-187; Doc. No. 34 in 6:05-ap-188; and Doc. No. 31 in 6:05-ap-191.

[2] Response to Second Motion to Compel:  Doc. No. 45 in 6:05-ap-187, Doc. No. 46 in 6:05-ap-188, and Doc. No. 41 in 6:05-ap-191;  Response to Defendant's Reply to Plaintiff's Response: Doc. No. 47 in 6:05-ap-187; Doc. No. 48 in 6:05-ap-188, and Doc. No. 43 in 6:05-ap-191.

Eventually, a Chapter 11 liquidating plan (Doc. No. 337) jointly proposed by the Unsecured Creditor's Committee and a secured creditor, Tampa Gateway Marine, Inc., was confirmed by an order entered on June 21, 2004 (Doc. No. 466). Pursuant to this order, the plaintiff, Michael Moecker, was appointed to act as Liquidating Trustee for Lentek.

Moecker's duties include prosecuting causes of action to maximize recovery to Lentek's creditors. To that end, Moecker filed these three adversary proceedings asserting various avoidance claims against Lentine's son, Logan Lentine (in Adversary Proceeding 05-187), against Louis Lentine (in Adversary Proceeding 05-188), and against Kelli Lentine, Louis' wife and Logan's mother (in Adversary Proceeding 05-191). The adversary proceedings were filed on July 8, 2005. After the Court ruled on various initial motions, the defendants filed answers and extensive discovery requests. The defendants' First Request for Production of Documents to Plaintiff and Initial Interrogatories were served around November 2, 2005 (the "Discovery Requests").[3] The defendants' current Second Motions to Compel relate to these Discovery Requests.

The amount of information sought by the defendants is voluminous. Moecker, as a liquidating trustee who never managed the debtor's business, was at a substantial disadvantage in gathering the documents requested. The debtor's files contained only a small number of documents; the majority of the documents reflecting the debtor's prior operations were never delivered to the plaintiff. As such, Moecker relies on documents produced in prior litigation between the debtor and Tampa Gateway Marine, Inc., as well as documents transferred to the entity that ultimately purchased the debtor's assets—Koolatron, Inc. When the plaintiff realized the difficulties attendant to timely producing the documents, he filed motions for extensions, and the defendants agreed to short extensions until January 6, 2006.

The Liquidating Trustee diligently worked to gather the requested documents but, given their diverse location and voluminous quantity, he could not produce the documents as quickly as the defendants wanted. Because the plaintiff supplied only partial responses to the outstanding discovery requests, the defendants then filed their first Motions to Compel[4] seeking the requested discovery responses. At the hearing on the initial Motions to Compel, it was clear to the Court that the defendants held unrealistic expectations as to how quickly the plaintiff could respond completely and fully to their discovery requests.

Accordingly, the Court imposed a production schedule[5] directing the plaintiff to supplement the prior interrogatory answers "to the best of his ability" by February 15, 2006, and additionally, to supplement his answers "as further information is discovered or becomes available." The Court also directed the plaintiff to produce the "core documents" supporting his claims by February 15, 2006. Lastly, the plaintiff was directed to identify specific transfers sought to be avoided in these adversary proceedings by March 24, 2006, and to use his best efforts to produce at least 50% of all outstanding documents by May 18, 2006.

The plaintiff met and exceeded the production schedule imposed by the Court insofar as the plaintiff produced 100% of the requested documents by March 27, 2006. To date, the plaintiff has produced over 75,000 documents and has provided two additional filings of supplemental interrogatory answers. Unfortunately, as a result of the accelerated production demanded by the defendants, the organization of the plaintiff's initial production was lacking. For example, the documents generally were classified by category but were not classified by any

---

[3] First Request for Production of Documents to Plaintiff and Initial Interrogatories: Document No. 16 in 6:05-ap-187, Document No. 14 in 6:05-ap-188, and Document No. 14 in 6:05-ap-191.
[4] Document No. 21 in 6:05-ap-187; Document No. 21 in 6:05-ap-188; and Document No. 19 in 6:05-ap-191.
[5] Order on Defendant's Motion to Compel Responses to Discovery: Doc. No. 24 in 6:05-ap-187, Doc. No. 24 in 6:05-ap-188, and Doc. No. 22 in 6:05-ap-191; Order Directing Discovery

particular document production request. The documents were not stamped by any identifying number, so it was difficult to put the documents in any type of useful order. Moreover, because the documents were inspected by a number of different counsel on different days, the loose organization became even more disorganized as the review sessions proceeded. Without question, the rushed production timetable created organizational problems.

The plaintiff's failure to classify documents by production request is the primary concern raised in the Motions, although other objections also are raised. However, the Court need not reach the substance of the Motions because the Court finds that the defendants have not conferred in good faith with the plaintiff prior to filing the Motions as required by Federal Rule of Civil Procedure 37(a)(2)(A).[6] That rule provides that every motion to compel discovery responses "must include a certification that the movant has in good faith conferred or attempted to confer with the party not making the disclosure in an effort to secure the disclosure without court action." The rule is clear. Courts should not get involved in discovery disputes until the parties have conferred and reached an impasse. Attorneys, as officers of the court, have a high duty to cooperate and to act civilly towards one another, regardless of a client's wishes. In this case, the Court cannot find that the defendants' counsel has met this standard of conduct.

Rather, in paragraph 7 of the Motions, defendants' counsel asserts that "[d]efendants have attempted to resolve the disputes outlined herein by way of correspondence dated April 20, 2006 and April 26, 2006, as well as a telephone conference on April 26, 2006, to no avail." The plaintiff, in his response to the Motions, acknowledges that defendants' counsel sent him two letters (Exhibits E and G to Plaintiff's Response), dated April 11 and April 20, 2006, setting forth specific concerns regarding the completeness of his discovery responses. After receiving

---

Schedule: Doc. No. 26 in 6:05-ap-187, Doc. No. 26 in 6:05-ap-188, and Doc. No. 24 in 6:05-ap-191.

the letters, plaintiff's counsel called defendants' counsel on April 26, 2006. During this conversation, the parties reached a number of agreements, including the agreement of the plaintiff to file supplemental interrogatory answers by May 12, 2006. The agreements are reflected in a confirmation letter prepared by defendants' counsel, dated April 26, 2006, and attached as Exhibit H to the plaintiff's response. In this letter, defendants' counsel states:

> Thank you for your call this morning.
>
> The purpose of this correspondence is to follow-up on my prior good faith correspondence of April 20, 2006 concerning the Lentine outstanding discovery requests, clarify a portion of my prior correspondence, to bring to your attention two additional responses which are incomplete which I omitted from my prior correspondence and memorialize our conversation concerning dealing [sic] with these issues….
>
> This correspondence also confirms our conversation on this date wherein you agreed to supplement the discovery requests cited in the April 20, 2006 correspondence and this correspondence by May 12, 2006. However, you recognized that if the supplemental responses do not comply with the objections to the Plaintiff's responses stated by the Lentines, the Lentines will file a motion to compel in each of their respective adversary proceedings for consideration by the Court at the status conference.
>
> I look forward to working with you to amicably resolve this issue.

Defendants' counsel offered no alternative version of the events as described by the plaintiff above. Instead, in the surreply, she merely states that "although Defendant disputes much of the representations, the Defendant will not reply to that portion of Plaintiff's Response."

The clear reading of the letter above indicates that the parties had reached an agreement on their discovery disputes and that defendant's counsel would expect supplemental interrogatory answers from the plaintiff by May 12. The parties further agreed that the

---

[6] Federal Rule of Civil Procedure 37 is applicable to adversary proceedings pursuant to Bankruptcy Rule 7037.

defendants would not file a motion to compel until and unless, in the defendants' opinion, the plaintiff's supplemental answers remained incomplete.

However, the defendants' counsel failed to abide by this agreement, and, inexplicably, filed the instant Motions on May 8, 2006, *prior* to the agreed date[7] by which the plaintiff would file supplemental interrogatory answers.  Not only do the Motions raise all of the issues resolved by the parties on April 26, they also raise new issues, such as who should pay for the numbering of the produced documents. Contested discovery motions are a final option to be pursued only when negotiations fail; they are never the initial volley and should never be used to raise new discovery issues.  Certainly, motions to compel are never appropriate when they contradict an agreement between counsel, here made only a few days prior.  In this case, plaintiff's counsel reasonably interpreted that the discovery dispute was resolved, at least for the time, when, out of blue, he received the Motions raising many of the same issues that he and the defendants' counsel had just settled.

The Court expects parties to do just as the federal rules require—confer on <u>all</u> open issues prior to filing any request for court action.  Motions to compel should never be a surprise to opposing counsel.  The Court is more than willing to resolve legitimate disputes between the parties when appropriate.  Certainly, parties can disagree on the completeness of a discovery response.  However, the Court will not consider such disputes until the parties have attempted and been unable to resolve their disputes between them.

Here, defendants' counsel fails to give the Court any basis on which to find she made a good faith effort to resolve the newly raised discovery disputes with opposing counsel. Moreover, her assertion in paragraph 7 of the Motions that the defendants attempted to resolve their disputes "to no avail" falls short as a certification of conferring with the opposing party in

---

[7] Plaintiff timely served the desired supplemental answers one day early, on May 11, 2006.

good faith and is misleading and inconsistent with the confirmation letter she sent to opposing counsel dated April 26, 2006. Further, the Court fully expects parties to independently resolve all minor issues, such as who pays the charge to number produced documents. Accordingly, because defendants' counsel has not demonstrated that she conferred in good faith prior to filing the Motions, the Motions will be denied. A separate order consistent with this Memorandum Opinion shall be issued.

As the parties embark on these further discussions, the Court will offer some suggestions. The parties may want to retain a mediator to insure that all outstanding discovery issues are understood by all parties and to facilitate agreements and to confirm that an impasse was reached after good faith negotiations. The parties, particularly the defendants, need to accept that discovery in complex cases takes time and that one cannot expect both immediate production of over 75,000 documents and complete classification of the documents. The defendants have had the vast bulk of the documents since April, 2006, and, although they absolutely are entitled to specific classification of the documents by Moecker and a formal privilege log, this process takes time. The parties also should consider that any more prematurely filed motions to compel or any truly dilatory actions (as opposed to imagined delay by the plaintiff) will prompt the Court to award attorney fees and possibly sanctions to the prevailing party.

DONE and ORDERED in Orlando, Florida, this 12th day of September, 2006

KAREN S. JENNEMANN
United States Bankruptcy Judge